**WO**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| James Hagar, | No. CV10-2748-PHX-DGC |
| Plaintiff, | **ORDER** |
| vs. | |
| Chief Alan G. Rodbell; Det. Brent Vahle; Det. Michelle LeFay; Det. Aaron Crawford; Det. Kevin Orvis; Sgt. Robert Hoskin; Officer Gary Gratz; Det. Michael Whitcomb; Ofc. David Alvarado; Det. Laurie Swanson; Ofc. J. Kleinheinz; Ofc. E. Rodriguez; Det. Johnnie Ghiglia; Ofc. Alex Dyer; Ofc. Trevor Anderson; Ofc. Andrew Marshall; Ofc. Scott Galbraith; Ofc. James Peters; Ofc. David Weaver; Ofc. Cody Dikeman; Sgt. Richard Slavin; Ofc. Nathan Mullilns; Sgt. Thomas Myers; Ofc. Christopher Ruscitti; Ofc. Johnathan Gambill; DOES 1-100; XYZ Companies 1-100, | |
| Defendants. | |

Defendants filed a motion for summary judgment on July 27, 2011. Doc. 23.  The Court denied the motion without prejudice.  Doc. 28.  Defendants have again filed a motion for summary judgment on all claims.  Doc. 31.  Plaintiff has filed a response, (Doc. 35; see also Doc. 37), and Defendants have filed a reply (Doc. 36).  No party has requested oral argument.   For the reasons that follow, the Court will grant in part and deny in part Defendants' motion for summary judgment.

**I.     Background.**

On November 23, 2009, Plaintiff was arrested in Scottsdale, Arizona after being detained by the residents of a home he was attempting to enter.  Doc. 35-1 at 2.  During this arrest, Kristen Mathieson's vehicle was found backed into the backyard of the residence.  Doc. 31 at 3.  Later on November 23, Mathieson called the police and admitted taking Plaintiff to the Scottsdale residence and driving her vehicle into the backyard.  Doc. 31 at 3.  From this information, Detective Michelle LeFay determined that probable cause existed to arrest Mathieson for criminal trespass.  *Id.*

On December 16, 2009, Mathieson was stopped by the Scottsdale Police Department while driving with Plaintiff.  Doc. 35-1 at 3.  During this stop, Mathieson was arrested for Criminal Trespass and her car was to be towed.  *Id.*  Pursuant to policy, police officers inventoried Mathieson's vehicle and discovered drug paraphernalia in a small container.  *Id.*  Due to the location of the drug paraphernalia and the subsequent denial of ownership, Plaintiff was arrested along with Mathieson.  *Id.*  While in custody, Mathieson was interviewed by Detective LeFay.  Doc. 31 at 4.  Mathieson told Detective LeFay she had seen guns and ammunition at Plaintiff's residence, she had seen Plaintiff carry a gun in his waistband, and that she had seen Plaintiff use drugs at his residence. Doc.31-3 at 35-41.  Based on the information from Mathieson, the drug paraphernalia found in the vehicle, and a criminal history report of Plaintiff[1], a warrant was issued to search Plaintiff's residence.  Doc. 31-1 at 6.

The Scottsdale PD SWAT Team was tasked with serving the search warrant because the residence was believed to contain dangerous guns.  Doc. 31-1 at 8.  On December 17, 2009, the SWAT Team, while approaching the door, dismantled at least one security camera and used a ram to breach the door and enter the residence.  Doc. 31-1 at 8; Doc. 35-1 ¶¶ 22-24.  While the SWAT Team was securing the residence, several

---

[1] Detective Vahle also determined from records at the Arizona Department of Corrections that Plaintiff was prohibited from possessing any and all firearms.  Doc. 31-5 at 32.

light/sound diversionary devices were deployed including one device that was deployed inside of Plaintiff's residence.[2] Doc. 31-1¶ 29; Doc. 35-1 ¶ 25.  After the home was secured, the SWAT Team left while other personnel executed the search.  Doc. 31-1 ¶ 31.  The interior of the home, the garage, and the attic were searched.  Doc. 31-1 at 9-10.  Plaintiff's vehicle was impounded and a warrant was issued to search the vehicle.  Doc. 31-5 at 50-51.

After a criminal conviction, Plaintiff filed this civil suit against Defendants alleging trespass, trespass to chattels, false imprisonment, conversion, failure to train, and violations of Plaintiff's Fourth, Fifth and Fourteenth Amendment rights.

**II.    Analysis.**

Summary judgment is appropriate when the pleadings, the disclosure materials, the discovery, and the affidavits establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A material fact is one which may affect the outcome of the case.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is genuine if the evidence is such that a reasonable trier of fact could return a verdict in favor of the nonmoving party.  *Id.*

A party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  Where the movant will have the burden of proof on an issue at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party."  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  "On an issue as to which the nonmoving party will have the burden of proof, however,

---

[2] Plaintiff refers to these devices as "flash bangs."

the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Id.* (citing *Celotex*, 477 U.S. at 323).

If the movant has sustained its burden, the nonmoving party must "show a genuine issue of material fact by presenting *affirmative evidence* from which a jury could find in [its] favor." *FTC v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009) (emphasis in the original). The nonmoving party must go beyond the allegations set forth in its pleadings. *See* Fed. R. Civ. P. 56(c). Conclusory allegations, unsupported by factual material, are insufficient to defeat a motion for summary judgment. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "[B]ald assertions or a mere scintilla of evidence" will not suffice. *Stefanchik*, 559 F.3d at 929. Indeed, the mere presence of "some metaphysical doubt as to the material facts" is insufficient to withstand a motion for summary judgment. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.* at 587 (citation omitted).

In resolving a summary judgment motion, "the court does not make credibility determinations or weigh conflicting evidence." *Soremekun*, 509 F.3d at 984. Rather, "[t]he evidence of the [nonmoving party] is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Anderson*, 477 U.S. at 255. Inferences, however, are not drawn out of the air; the nonmoving party must provide a factual predicate from which the inference may justifiably be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal.1985).

Courts disfavor summary judgment when relevant evidence remains to be discovered. *Taylor v. Sentry Life Ins.*, 729 F.2d 652, 656 (9th Cir. 1984). The burden is on the nonmoving party to show specific facts it hopes to discover that will raise an issue of material fact. *Hall v. Hawaii*, 791 F.2d 759, 761 (9th Cir. 1986); *see also Continental Maritime v. Pacific Coast Metal Trades*, 817 F.2d 1391, 1395 (9th Cir. 1987). Plaintiff argues that it is inappropriate for the Court to consider summary judgment at this time, but he has not provided an affidavit pursuant to Rule 56(d) specifying specific reasons

why he cannot present facts opposing the motion.  The Court believes that adequate time has been given to both parties for discovery.

### A.    Constitutional Claim: 42 U.S.C. § 1983.

Plaintiff nebulously alleges violations of his Fourth, Fifth, and Fourteenth Amendment rights.  Doc. 1-1 at 10.  Because he has failed to address the Fifth and Fourteenth Amendment violations with any specificity, the Court will consider only his Fourth Amendment allegation.  *See Carmen v. San Fransisco Unified School Dist.*, 237 F.2d 1026, 1031 (9th Cir. 2001) (denying to search the record for a genuine issue of fact because the court is not the lawyer for the respondent and doing so would deprive the moving party of an opportunity to address the matter in its reply).

The Defendants believe that Plaintiff's Fourth Amendment violation arises from an alleged unreasonable search and seizure of Plaintiff's residence.  Doc. 31 at 11.  Plaintiff alleges that five security cameras were ruined, the front door and the door frame were damaged, a two foot square portion of the living room carpet was burned, ceilings in multiple rooms were cracked, and his pet dogs were terrorized during the search of his residence on December 17, 2009.  Doc. 37-1 at 10, 15-16; Doc. 37-2 at 6-7; Doc. 37-3 at 5.  Defendants allege that the only damage to Plaintiff's residence was minor damage to the front door and a minor burn on the rug.  Doc. 31-1 at. 11-12.

An otherwise lawful search and seizure can violate the Fourth Amendment if it is executed in an unreasonable manner.  *See United States v. Jacobsen*, 466 U.S. 109, 124 (1984).  "To assess the reasonableness of th[e] conduct, [a court] must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion."  *Id.* at 125 (internal quotation marks omitted).  Plaintiff has presented evidence that supports his allegations of damage to his residence during the December 17 search.[3]  *See, e.g., San*

---

[3] Defendant's objected to paragraphs 24-28 in Plaintiff's statement of facts.  This objection is overruled because the three affidavits provided by Plaintiff are sufficient to support the factual allegations that are relevant to this claim.  Plaintiff provided affidavits of Allison Wolfe (owner of the home searched on December 17), Jacob Wolfe (Allison's

*Jose Charter of Hells Angels Motorcycle Club v. City of San Jose*, 402 F.3d 962 (9th Cir. 2005) (upholding the district court's denial of summary judgment when damage to the plaintiff's property included, *inter alia*, cutting off mailbox, breaking refrigerator door, and removal of a concrete slab); *Youngbey v. District of Columbia*, 766 F.Supp.2d 197, 220 (D.D.C. 2011) (holding that the use of flash bang grenades in a residence of a homicide suspect who might have a gun did not warrant dismissal at the summary judgment stage). It is not clear that the alleged damage rises to the level of a constitutional violation because officers executing a search warrant occasionally "must damage property in order to perform their duty." *Dalia v. United States*, 441 U.S. 238, 258, (1979). Whether the damage alleged by Plaintiff is unreasonable, however, is a question of fact best left for the jury to decide with the benefit of a full record. *See Chew v. Gates*, 27 F.3d 1432, 1443 (9th Cir. 1994) (reasonableness under the Fourth Amendment is ordinarily a fact question for the jury). Thus, the Court denies Defendants motion for summary judgment with respect to this Fourth Amendment violation.

### B.     Claim I: Trespass to Land.

Plaintiff alleges that Defendants trespassed on his property during the search of his residence on December 17, 2009, under the guise of a purportedly valid search warrant. Doc. 35 at 12. Defendants argue that this claim fails as a matter of law because they were acting under a valid search warrant and an officer is not liable for trespass when he is required to enter private property to perform his duties. Doc. 31 at 12. Defendants, as the parties moving for summary judgment, have the burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323. Defendants have presented evidence sufficient to support a finding that they entered Plaintiff's residence pursuant to a valid search warrant, and that the warrant was based on probable cause. Doc. 31-2 to Doc. 31-5.

---

son), and a declaration from Plaintiff made under penalty of perjury. *See Winterrowd v. Nelson*, 480 F.3d 1181, 1183 n.3 (9th Cir. 2007) (noting that the affidavit requirements of Fed. R. Civ. P. 56(e) is substantially complied with when a party swears under penalty of perjury).

"All data necessary to show probable cause for the issuance of a search warrant must be contained within the four corners of a written affidavit given under oath." *Gourde*, 440 F.3d at 1067 (quoting *United States v. Anderson*, 453 F.2d 174, 175 (9th Cir. 1971) (internal quotation marks omitted).  Agent Vahle submitted an affidavit to Superior Court Judge Donofrio which contained the following information:

> • Detective Vahle has been with the Scottsdale Police Department since January 2000.  Detective Vahle has made numerous burglary, drug, theft, and property crime related investigations and arrests and is familiar with such crimes.  Doc. 31-5 at 31.  Detective Vahle has been involved with numerous search warrants related to property, fraud and forgery, weapons violations, and drug related offenses.  *Id.*

> • On November 23, 2009 Plaintiff was investigated for an alleged crime of burglary, possession of burglary tools, and criminal trespass after being tackled and detained by family members of a home he was attempting to enter.  *Id.* at 31-32.  Burglary tools were found in Kristen Mathesion's vehicle at the home where Plaintiff was arrested at.  *Id.*  The case was submitted to Maricopa County Attorney's Office, but was turned down because of "no likely hood [sic] of conviction."  *Id.*  Mathieson later contacted Scottsdale dispatch regarding the incident and admitted taking Plaintiff to the home and backing her vehicle into the backyard.  *Id.*  Based on the totality of the circumstances, Scottsdale City Prosecutor agreed to charge Mathieson with misdemeanor criminal trespass and Plaintiff with criminal trespass, possession of burglary tools, and disorderly conduct.

> • Detective Vahle conducted a criminal history check on Plaintiff and discovered three felony convictions for manufacturing dangerous drugs and fortifying a building for drug trafficking.  *Id.*  Detective Vahle also discovered that Plaintiff was prohibited from possessing any and all firearms and had a couple prior weapons misconduct arrests.  *Id.* at 32-33.

1     •     On December 16, 2009, detectives conducted surveillance on

2   Mathieson with the goal of arresting her for criminal trespass.  *Id.* at 33.  During

3   the surveillance, detectives followed Mathieson to Plaintiff's residence where

4   Plaintiff joined Mathieson in her vehicle.  *Id.*   About 45 minutes later, both

5   Plaintiff and Mathieson were stopped by detectives in the vehicle.  *Id.*  Mathieson

6   was arrested and the detectives conducted an inventory of her vehicle prior to

7   towing it.  *Id.*  During the inventory, a drug kit with drug paraphernalia was found

8   within the reach of both Mathieson and Plaintiff.  *Id.*  Plaintiff and Mathieson

9   denied knowledge of the drug kit and Plaintiff was arrested.  *Id.*

10     •     While Mathieson was in custody, she was interviewed by detectives

11   where she confirmed she was with Plaintiff while they unlawfully entered the

12   backyard of the home on November 23, 2009.  *Id.*  Mathieson also told police that

13   she had personally seen Plaintiff use Methamphetamines in his office and that

14   Plaintiff "has lots of guns*."  Id.*  After being asked to clarify, Mathieson stated that

15   she had seen lots of gold colored bullets about three inches long and a gun in

16   Plaintiff's office.  *Id.*  Mathieson asked the detectives what is that "ariel thing that

17   goes with a band, that you see them shoot and it's got like a strip" and "like you

18   see in the movies," and then made a motion with her arms like she was shooting a

19   large gun.  *Id.*  The detectives clarified that Mathieson was speaking about a

20   machine gun with a band or strip of bullets fed into the gun.  *Id.*  Mathieson was

21   sure it was a real gun and that it was sitting on top of the file cabinet.  *Id.*

22   Mathieson further stated that she had seen Plaintiff carry a handgun in his front

23   waistband on several occasions.  *Id.* at 33-34.  A handgun was believed to be at

24   Plaintiff's residence because one was not found in his possession when he was

25   arrested.  *Id.*

26   Considering the totality of the circumstances, the Court holds that there was a fair

27   probability that evidence of drugs, drug paraphernalia, or firearms would be found in

28   Plaintiff's residence.  The affidavit provided sufficient detail about the type of guns and

ammunition Mathieson saw at Plaintiff's residence one night prior.  The affidavit provided information about Plaintiff using methamphetamine in his office.  The affidavit further identified that Plaintiff had three previous drug convictions and was not legally authorized to carry or possess any firearm.  This information clearly provided probable cause to believe that Plaintiff's residence may contain drugs, drug paraphernalia, or firearms.  Because the warrant underlying the search on December 16 was based on sufficient probable cause, Defendants' presence at Plaintiff's home does not constitute the tort of trespass.  *See United States v. Capps*, 435 F.2d 637, 640 n.4 (9th Cir. 1970) (stating that when an officer's duty requires him to enter private property his action is justifiable); Ariz. Rev. Stat. Ann. § 13-3916 (2011) (West) (permitting an officer to break into a building or premises to execute a warrant).

Plaintiff argues that the search warrant was unlawful because it was based on highly suspect information.  Doc. 35-1 ¶ 22.  The Court disagrees.  In establishing probable cause, "only the probability, and not a prima facie showing, of criminal activity" is necessary.  *State v. Emery*, 642 P.2d 838, 850 (Ariz. 1982) (quoting *Spinelli v. United States*, 393 U.S. 410, 419 (1969)).  Evidence supporting a finding of probable cause for a search warrant may be based on information by accomplices, hearsay statements, or other inadmissible evidence.  *State v. Archer*, 534 P.2d 1083, 1085-86 (holding that statements from a juvenile accomplice in support of a search warrant was sufficient to provide probable cause because the juvenile personally witnessed some of the crimes); *State v. Adamson*, 665 P.2d 972, 980 (Ariz. 1983) (holding that evidence supporting a finding of probable cause for a search warrant need not meet the standard for admissibility of trial); *United States v. One 56-Foot Yacht Named Tahuna*, 702 F.2d 1276, 1284 (9th Cir. 1983) (finding that an affidavit for a search warrant may be based on hearsay information and need not reflect direct personal observations).  The Court will grant Defendants' motion for summary judgment with respect to Claim I.

### C.   Claim II: Trespass to Chattels.

Plaintiff alleges that Defendants intentionally, knowingly, or recklessly interfered

with Plaintiff's right of possession in his truck, electronic equipment, pets, and other personal property.  Doc. 35 at 13.  Defendants argue that this claim fails as a matter of law because the alleged trespass to these chattels occurred pursuant to a search warrant and was supported by sufficient probable cause. Doc. 31 at 12.

In Arizona, "the tort of trespass to a chattel may be committed by intentionally dispossessing another of the chattel or using or intermeddling with the chattel in the possession of another."  *Sprint Commc'ns Co. v. Western Innovations*, 618 F. Supp.2d 1101, 1114 (D. Ariz. 2009) (citing *Koepnick v. Sears Roebuck Co.*, 762 P.2d 609, 617-618 (Ariz. App. 1988); Restatement (Second) of Torts § 217 (1965)).  In *Koepnick*, the Court cited comment b to § 221 of the Restatement providing that "dispossession may occur when someone intentionally assumes physical control over the chattel in a way which will be destructive of the possessory interest of the other person. . . .  [O]n the other hand, an intermeddling is not a dispossession unless the actor intends to exercise a dominion and control over it inconsistent with a possession in any other person other than himself." 762 P.2d at 618.

With regard to the electronic equipment, Plaintiff alleges that Defendants interfered with Plaintiff's right of possession in his security cameras because the property was damaged or destroyed.  Doc. 35 at 13.  Defendants allege that the presence of exterior security cameras were believed to be a detriment to officer safety and one camera was removed by Detective Marshall with a pry tool while the SWAT Team was approaching Plaintiff's door during the search of December 17, 2009.  Doc. 31-1. Because Plaintiff alleges that five security cameras were completely destroyed, (Doc. 37-1 at 16) and Defendants only discuss the removal of one (Doc. 35 ¶¶ 26, 43), a dispute to a material fact exists.  The Court cannot grant summary judgment with respect to a trespass to chattels claim for the security cameras.

With regard to the pets and other personal property, Plaintiff alleges that Defendants interfered with his possessory interest in his pets and "other personal property."  Doc. 35 at 13.  Plaintiff does not define or identify any other personal

property and therefore the Court will only consider a trespass claim for his pets.  Plaintiff alleges that Defendant's pointed their weapons, yelled at, and threw a flash bang grenade at his dog.  Doc. 37-1 at 10. Plaintiff does not, however, provide a factual basis to show any interference with his possessory interest in his dog.  Nor does Plaintiff allege any injury resulting from Defendants' conduct.  The Court will grant summary judgment on Plaintiff's claim regarding his pets and other personal property.

Plaintiff claims that Defendants intentionally, knowingly, or recklessly interfered with his right of possession in his truck because it was damaged or destroyed.[4]  Doc. 35 at 13.  Defendants argue that Plaintiff's truck was lawfully removed from his residence and that the warrant to search Plaintiff's truck was based on probable cause.  Doc. 31 at 12; Doc. 36 at 8.  The Court finds there was sufficient probable cause to impound the vehicle during the December 17 search and that the subsequent search of Plaintiff's vehicle was based on a valid search warrant.

It is undisputed that during the search of Plaintiff's residence on December 17, multiple guns, ammunition, drug paraphernalia, and other items were found.  Doc. 31-1 at 11-12.  Among the items found was an empty Heckler & Koch pistol box with an identification number of 26093051, which, after conducting an inquiry, Sargent Hoskin learned was stolen.  Doc. 31 at 8.  Given this information, the detectives reasonably believed that Plaintiff's truck and metal toolbox may contain additional evidence of weapons misconduct.  Doc. 31-1 at 12.  Because of the possibility that it could be moved by others, detectives arranged to have the truck towed to a district station so that an addendum search warrant could be obtained.  Doc. 31-1 at 12.  The items recovered during the search, along with the reasonable inference that a Heckler & Koch pistol may be found in Plaintiff's vehicle, were sufficient to lead a reasonable person to believe that Plaintiff's vehicle may contain drugs or firearms.

---

[4] Plaintiff has not provided any evidence that his vehicle was damaged other than stating that he was missing a silver combination lock that went to his toolbox.  Doc. 37-1 at 11.

The affidavit for the warrant to search Plaintiff's vehicle was based on the items recovered from the December 17 search along with the information provided in the affidavit of the first search warrant. Doc. 31-5 at 50-51. This information is sufficient to support a valid search warrant and the Court will grant summary judgment with respect to the seizure and search of Plaintiff's vehicle. *Capps*, 435 F.2d at 640 n.4.

**D.     Count III: False Imprisonment.**

Plaintiff alleges that his arrest was based entirely on "suspect information from a known drug addict with psychological and mental health problems, who was also off her psychotropic medications for some length of time." Doc. 35 at 14. Plaintiff fails to identify, however, when he was falsely arrested or imprisoned.

Two arrests are relevant to the facts in this case. Plaintiff was arrested on November 23, 2009, when he was detained by a family as he was attempting to break into their home. Doc. 37-1 at 3-5. Plaintiff was also arrested on December 16, 2009, when drug paraphernalia were found in Mathieson's vehicle in which he was a passenger. Doc. 37-1 at 7-8. Defendants argue that probable cause existed to arrest Plaintiff during both occasions. *See Slade v. City of Phoenix*, 541 P.2d 550 (1975) (unlawful detention essential element of false arrest and false imprisonment); *see also Cullison v. City of Peoria*, 584 P.2d 1156 (1978) (false imprisonment defined as detention of person without consent and without lawful authority). The Court agrees.

Probable cause to arrest exists when "reasonably trustworthy information and circumstance would lead a person of reasonable caution to believe that a suspect has committed an offense." *State v. Hoskins*, 14 P.3d 997, 1007–08 (Ariz. 2000). "Probable cause is something less than the proof needed to convict and something more than suspicions." *State v. Howard*, 785 P.2d 1235, 1238 (Ariz. App. 1989).

On November 23, 2009, Plaintiff attempted to enter a deceased friend's home to recover some items that Plaintiff alleges he left there. Doc. 37-1 at 3. While attempting to open the back door of the home, the family of the decedent tackled Plaintiff and detained him until police arrived. Doc. 37-1 at 3-4. These undisputed facts are sufficient

1   to lead a person of reasonable caution to believe that Plaintiff had criminally trespassed.

2   On December 16, 2009, Mathieson drove to Plaintiff's home.  Doc. 37-1 at 6.

3   Plaintiff and Mathieson left the house in Mathieson's vehicle.  *Id.*  They were stopped by

4   police and Mathieson was arrested for criminal trespass.  *Id.* at 7.  Mathieson's car was

5   inventoried before being towed and drug paraphernalia was found within the reach of

6   both Mathieson and Plaintiff.  *Id.* at 8.  Both denied ownership of the drugs, so Plaintiff

7   was arrested along with Mathieson.  *Id.*  These undisputed facts are sufficient to lead a

8   person of reasonable caution to believe that Plaintiff was in possession of illegal drug

9   paraphernalia, justifying his arrest.  Defendants' motion for summary judgment with

10  respect to false imprisonment is granted.

11          **E.      Count IV: Conversion.**

12          The only property mentioned in Plaintiff's discussion of this count is his truck.

13  Doc. 35 at 16-17.  For reasons discussed above, the Court concludes that Defendants

14  lawfully seized and searched the truck.  No tort for conversion occurred.  Ariz. Rev. Stat.

15  Ann. § 13-413; *see Chambers*, 399 U.S. at 51.

16          **F.      Count V: Failure to Train.**

17          Plaintiff alleges that Defendants breached their duty to understand, train, and

18  enforce the law.  Doc. 35 at 19.  Plaintiff alleges that Defendants were deliberately

19  indifferent to Plaintiff and the community and that this unethical conduct caused damage.

20  Doc. 35 at 19.  Defendants argue that Plaintiff has failed to provide any evidence to

21  support a claim for failure to train.[5]  Doc. 31 at 14.

22          The inadequate training of police officers may support a claim under § 1983 only

23  where "the failure to train amounts to deliberate indifference to the rights of persons with

24  whom the police come into contact."  *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388

25  (1989).  "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a

26  _____

27          [5] Defendants also note that Plaintiff did not name the municipality in this claim.  It
    is noted that every case that Plaintiff relies on for this claim has named the municipality
28  as a party.

- 13 -

1  municipality – a 'policy' defined by our prior cases – can a city be liable for such a

2  failure under § 1983."  *Id.* at 389; *Pembaur v. Cincinnati*, 475 U.S. 469, 483-84 (1986)

3  ("[M]unicipal liability under § 1983 attaches where – and only where – a deliberate

4  choice to follow a course of action is made from among various alternatives" by city

5  policy makers).

6          Plaintiff has provided no evidence to show a policy or a deliberate indifference to

7  rights of persons generally or Plaintiff specifically.   The Court will grant summary

8  judgment on this claim.  *Taylor*, 880 F.2d at 1045 ("summary judgment motion cannot be

9  defeated by relying solely on conclusory allegations unsupported by factual data"); *Jones*

10 *v. Cmty. Redev. Agency*, 733 F.2d 646, 649 (9th Cir. 1984) (holding that conclusional

11 allegations not supported by facts an insufficient basis for a claim).

12         **IT IS ORDERED:**

13         Defendants' motion for summary judgment (Doc. 31) is **granted** with respect to

14 the following claims:  Plaintiff's Claim I (Trespass), Claim II (Trespass to Chattels) with

15 respect to any claim for personal property, pets, and Plaintiffs vehicle, Claim III (False

16 Imprisonment), Claim IV (Conversion), Claim V (Failure to train).  The motion is **denied**

17 with respect to the following claims: Plaintiff's Fourth Amendment claim alleging an

18 unreasonable search of Plaintiff's home, Claim II (Trespass to Chattels) with respect to

19 Plaintiffs security cameras.

20         Dated this 12th day of March, 2012.

21

22

23                                                   *David G. Campbell*

24                                        _____

25                                                   David G. Campbell
                                                 United States District Judge

26

27

28